

FILED ___ LODGED
___ RECEIVED ___ COPY

MAY 2 3 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

From the desk of:
Scott-Thomas; .Bradley
Secured Party Creditor of: SCOTT THOMAS BRADLEY™
Address: in care of rural route
18440 North 68th Street, #4040
Phoenix, Arizona [Zip Exempt]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Case/CUSIP Attaching Number:

**CV22-00874-PHX-JJT**

SCOTT THOMAS BRADLEY – VESSEL

By Scott-Thomas; .Bradley – Executor/Beneficiary

Plaintiff,

v.

LORI LYNN BRADLEY

Defendant.

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _LRCwP 7,1(Cb)c1)___
(Rule Number/Section)

---

## PLAINTIFF'S VERIFIED COMPLAINT AND DEMAND FOR INJUCTIVE AND DECLARATORY RELIEF

---

### I.   INTRODUCTION AND STATEMENT OF CLAIM

1. **COMES NOW,** Scott-Thomas; .Bradley, herein Plaintiff, appearing by DIVINE SPECIAL APPEARANCE, a living Arizonan, American National man (a non-employee of the UNITED STATES Corporation, non-14th Amendment Citizen, non-"Person", non-"Resident"), telling TRUTH as a Living Testimony before YHWH, praying to YHWH before the ears of this Court for His righteous judgment, *Jus Soli, Sui Juris*, coming here in all humility and meekness, at Peace and in Honor, with clean hands and a pure heart, *rectus in curia*, the Executor and Beneficiary of the CQV Trust (minor estate), being of sound mind, possessing and holding all my property, including all vessels of me and my children in an expressed trust, standing on behalf of the best interests of my and the Defendant's shared daughter (a minor of six years of age), do hereby produce this verified claim in the form of an affidavit of truth and facts under the penalty of perjury, hereby serves this suit against Lori Lynn Bradley, a "U.S. Citizen", bringing this cause of action for a pattern of behavior of lawless, unconstitutional conduct, including but not limited to, tortious actions of custodial interference, parental

kidnapping, parental alienation, intentional infliction of emotional distress, harassment, child abuse and domestic violence.

2. The Defendant's continuous and ongoing pattern of behavior violates our daughter's sacred God-given rights to emotional health, safety, and the enjoyment of life with her father and brother (son of father from a prior relationship), violates my sacred God-given parental rights as a father to the enjoyment of life with our daughter, and violates the mutual rights of love and need for each other as father-daughter.

3. I, the Plaintiff, have suffered, and continue to suffer, as a direct and proximate cause of the Defendant's actions, significant damages, including but not limited to, harm to my reputation, shame, humiliation, legal expenses, financial damages from taking time off work to deal with these matters, and most importantly loss of time, affection, love in my relationship with my daughter, causing severe mental, emotional, and financial distress.

4. The Plaintiff's and Defendant's mutual daughter, has suffered, and continues to suffer, as a direct and proximate cause of the Defendant's actions against her best interests, significant damages, including but not limited to, severe mental and emotional distress caused by the dislocation from the emotional attachments that derive from the intimacy of daily association with her father and brother, dislocation from her familiar surroundings of secure housing and a history of loving care at our home, frequent absence and early check-out of school, and the Defendant's failure to take her to certain social activities, such as dance class, in attempts to avoid and evade contact with the Plaintiff, rising to the level of child abuse in the form of emotional and psychological abuse through Parental Alienation.

   (a) Children have a constitutional right to avoid dislocat[ion] from the emotional attachments that derive from the intimacy of daily association with the parent. *Duchesne v. Sugarman, 566 F.2d 817, 825 (2nd Cir. 1977).*

   (b) "Causing parental alienation in a child is on par with physical and sexual abuse. It is considered child psychological abuse and is subsumed in DSM-5 (V995.51). Parental alienation is real, definable, and toxic. In severe cases, it is so malignant that it can undermine a child's psychological development. It is not hyperbole to say it can be catastrophic." *[https://www.contemporarypediatrics.com/ view/the-toll-of-parental-alienation-on-children by Alan D. Blotcky, PhD Clinical & Forensic Psychologist]*

5. Parental rights are sacred, fundamental, natural, universal, and un-a-lien-able. They are not created by the laws of man, they are a gift from God Himself.

   (a) "Lo, children are a heritage from YHWH." *(Psalm 127:1 KJV)*

   (b) *Partus sequitur ventrem.* "The offspring follow the condition of the mother, this is the case of slaves and animals; 1 Bouv. Inst. N. 167, 502; but with regard to freemen, children follow the condition of the father."

   (c) *Haeredem Deus facit, non homo.* "God and not man, make the heir." (*Maxim of Law*)

   (d) *Solus Deus haeredem facit.* "God alone makes the heir." (*Maxim of Law*)

   (e) *Pecata contra naturam sunt gravissima.* "Offenses against nature are the gravest." (*Maxim of Law*)

6. Furthermore, the laws of this great Nation declare parental rights to a child are *stare decisis*; affirmed by the Supreme Court and other authorities as both fundamental and sacred, and protected by the Constitution.

   (a) The fundamental rights of parents "*in the companionship, care, custody, and management*" of their children was affirmed by Supreme Court in *Stanley v. Illinois, 405 U.S. 645, 651 (1972).*

   (b) The Supreme Court declared that the Constitution…protects the fundamental right of parents to direct the care, upbringing, and education of their children. *Washington v. Glucksberg, 521 U.S. 702 (1997).*

   (c) The child is not the mere creature of the State; those who nurture [her] and direct [her] destiny have the right, coupled with the high duty, to recognize and prepare [her] for additional obligations. *Pierce v. Society of Sisters, 268 U.S. 570 (1925).*

   (d) Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. *Moore v. East Cleveland, 431 U.S. 494 (1977).*

   (e) So inviolable and sacred is this right that the Supreme Court declared a presumption that "a fit parent will act in the best interest of his or her child." *Troxel v. Granville, 530 U.S. 69 (2000).*

7. As laid out in the facts herein, the Defendant has acted, and continues to act, that her rights as a mother to control and withhold parenting time of our daughter, are unequally superior to my rights as a father, and has expressed via email and by her actions her views that it is "in the best interests of our daughter" to spend little or no time with her father and brother. The Defendant's pattern of behavior is indicative of a thought disorder/delusion.

8. A father's parental rights concerning his children are no less fundamental than a mother's. *"Unless otherwise required by law, the rights of parents of minor children shall not be limited or denied." ARS § 1.602(D).*

9. I, Plaintiff, do aver that at the cost of enduring great personal pain and distress, I have done everything within my ability to remain in honor and at peace, create the least emotional distress for our daughter, and have dealt lawfully at all times during this process, having given the Defendant three opportunities to repent and cease her trespasses against me and our daughter, in accordance with God's law: *"One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth: at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established." (Deuteronomy 19:15) - Omne Triume Perfectum.*

   (a) *Qui jure suo utitur, nemini facit injuriam.* "He who uses his legal rights, harms no one."

   (b) *"Recompense to no man evil for evil. Provide things honest in the sight of all men. If it be possible, as much as lieth in you, live peaceably with all men."* (Romans 12:17-18)

10. All Truth and Facts listed herein have been previously served to the Defendant on three separate occasions, "Three Witnesses", through three separate Lawful Notice's of Trespass

and Affidavit's of Truth and Facts, that act as *nunc pro tunc* ("now for then") for this matter and all others, served via Registered Mail on the following dates:

(a) <u>First Lawful Notice & Affidavit</u>[1] – Mailed 3/21/22 via #RA 312 393 682 US and received 3/26/22. Defendant was given 30 days from receipt to repent, cease and desist trespasses, and rebut Affidavit. **First Witness.**

(b) <u>Second Lawful Notice & Affidavit</u>[2] – Mailed 4/25/22 via #RA 312 394 042 US. Defendant is evading delivery of Registered Mail, refusing to pick up from Post office and has been labeled as "unclaimed." Defendant was given notice of default, given 15 days to repent, cease and desist trespasses, and rebut Affidavits. **Second Witness.**

(c) <u>Third Lawful Notice & Affidavit</u>[3] – Mailed on 5/11/22 via #RA 312 394 039 US. Defendant is evading delivery of Registered Mail, refusing to pick up from Post office. Defendant was given notice of default, given 10 days to repent, cease and desist trespasses, and rebut Affidavits. **Third Witness.**

11. The Defendant has not repented from, nor has she ceased her tortious and harmful actions toward me the Plaintiff and our daughter.

12. All Affidavits stand unrebutted, resulting in the Defendant's tacit agreement and acquiescence that the facts set forth in it are true, correct, accurate, not misleading, and binding to the Defendant. *"[S]he who does not deny, admits."*

13. WHEREAS, in commerce Truth is sovereign; Truth is expressed in the form of an Affidavit; an unrebutted Affidavit stands as Truth in commerce; and an unrebutted affidavit becomes the judgment; I seek no financial damages, I respectfully request and demand the Court to award a Summary Judgment for me, Scott-Thomas; .Bradley, according the best interests of my and the Defendant's daughter, and against the Defendant, Lori Lynn Bradley, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary/Sole Physical Custody for me the Plaintiff, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant as described herein, with an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper.

14. I, Scott-Thomas; .Bradley, am Accepting the Constitutional Oath of the presiding magistrate as his/her superior Oath, calling for a Constitutional Court of Record, asking for a Summary Judgment of the Truth and Facts placed upon the record by my <u>Court of Record</u>, <u>my documents</u>. Which have been properly served, publicly published and recorded in the Pima County Recorder's Office, and filed herein this case. Making them *res judicata*.

15. Whereas, <u>Rights and Power</u> are the two principle attributes of one of We The People, and <u>the most valuable Sovereign Property,</u> following forms of conveyance as Real Property, I hereby, in and from the beginning, invoke and enforce my un-a-<u>LIEN</u>-able rights, rights which are not capable of being surrendered or transferred without the consent of the one possessing them

---

[1] Annex 1 – First Lawful Notice & Affidavit of Truth and Facts
[2] Annex 2 – Second Lawful Notice and Affidavit of Truth and Facts
[3] Annex 3 – Third Lawful Notice and Affidavit of Truth and Facts

because they come from God and are common to all mankind. These natural rights are written in the documents listed below and are universally known as the supreme law of the land. I do not consent or give permission to violate any of my sovereign rights or dominion and hereby rebut any presumption contrary to my expressed will.

    (a) The Holy Bible 1611 KJV (GOD's Law is Superior Law) – *Public Law 97-280*

    (b) 1776 Declaration of Independence

    (c) 1777 Articles of Confederation

    (d) 1783 Treaty of Peace

    (e) 1787 Northwest Ordinance

    (f) 1789 The Constitution for the united States of America

    (g) 1791 Bill of Rights

    (h) 1868 The Constitution of The United States of America

    (i) 1864, 1929, and 1949 Geneva Conventions

    (j) 1948 The Universal Declaration of Human Rights

    (k) 1976 The International Covenant of Civil and Political Rights, Articles 1-27

16. As one of "We The People", an American state National, I hereby invoke, enforce and forever stand upon my Limited Diplomatic Immunity as per the Geneva Convention, in that I have done no intentional harm to another. If I, have unknowingly harmed another, let that living Man, Woman, or Child, come forward with a claim under sworn oath and under the penalty of perjury, so I can explain, repent, seek forgiveness, and make amends or rebut.

17. I, Plaintiff hereby invoke and enforce my right of redress of grievances as protected by the 1st Amendment to the Constitution of the United States and petition for *the speak and print and redress of grievances*. And USC 7th Amendment *right to trial by jury at common law*. Arizona Constitution Article 2 Section 4 shall have *remedy by due course of law*, Article 2 Section 2.1 of Ariz. Const., I claim all my *rights as a crime victim*. USC Article VI as the *law of the land* and as treaty between Arizona and the United States confirmed in Arizona Constitution Article 2 Section 3.

## I.    JURISDICTION and VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States", and this court has supplemental jurisdiction of the additional claims pursuant to 28 U.S.C. § 1367(a) as they all are so closely related, they form part of the same case or controversy.

19. The only Court authorized by the referenced Constitution to hear matters of the People is a court that conforms to and functions in accordance with the U.S. Constitution Article III, Section 2, which allows me the Plaintiff (a living man) compel and invoke the federal-court powers to coordinate a remedy for my *injury-in-fact* once I have shown a connection between my injury and the Defendant's conduct complained of, and a likelihood that my injury will be redressed by a favorable decision.

20. May 21, 2022, I paid the requested filing fee, something of real value which creates an implied contract protected by Article 1 Section 10 between me and the District of Arizona Court to grant remedy, relief, restitution for my injuries.

21. Venue is proper because the Defendant resides in this District and the Defendant's actions occurred within the jurisdiction of the District of Arizona Court's venue.

## II.    THE PARTIES

22. The Plaintiff, Scott-Thomas; .Bradley, is a private man who is *sui juris* and is an inhabitant on the land of the Arizona Republic (de jure), a free man of We The People, in my own right and authority as "I AM", capable in mind, body, and soul to handle my own affairs, do hereby establish that I AM is Present and in control of the proceedings of the Court, exalting TRUTH into the Public Record. The court belongs to the Sovereign, I AM, for the "court" is "the person and suit of the sovereign" (Black's Law 5th Edition, pg. 318). *"We may have boldness in the day of judgment: because __as He is__ (I AM), __so are we__ in this world"* (1 John 4:17).

23. The Defendant, Lori Lynn Bradley, is a "U.S. Citizen", who resides at 6611 E. Mayo Blvd., #3070, Phoenix, AZ 85054, in the District of Arizona.

24. The Plaintiff and Defendant entered into a legal marriage on September 8, 2014, in New York City, New York.

25. On January 20, 2016, the Plaintiff and Defendant were mutually entrusted the gift of an inheritance from God with the birth of our daughter.

26. On March 14, 2017, the Defendant filed for dissolution of marriage (FC2017-003309) in the SUPERIOR COURT OF ARIZONA (DNB #960278802) in and for the COUNTY OF MARICOPA (DNB #077535144), de facto, private, for-profit corporations, foreign and Acting/Pretending under "Color of Law". It was stipulated August 21, 2017.

27. Pursuant to ARS 13-3601 A. 1. And A. 2., I, Plaintiff, believe the relationship between myself and the Defendant meets the elements of a domestic relationship since the relationship between the Plaintiff and Defendant is "one of former marriage" and the Plaintiff and Defendant "have a child in common."

28. I, Scott-Thomas; .Bradley, am a living, breathing, Arizonan man, created in the image of God (see Genesis 1:26-28), I am diverse from Defendant as a Arizonan and the Defendant is a U.S. Citizen.

## III.    VERIFIED STATEMENT OF FACTS IN THE FORM OF AFFIDAVIT OF TRUTH
By: *Scott-Thomas; .Bradley*

29. Because there are NO Article III courts in STATE courts, thus I bring this claim to federal Court as my choice of venue for relief, remedy, and restitution.

30. I am of majority age, turned 18 in 2001.

31. I have no mental defect that inhibits me from making these factual statements to the best of my knowledge, and I file the following truth under penalty of perjury at common law.

32. The facts listed below are known to me personally.

33. I have been personally injured by the actions of the Defendant listed herein.

34. Upon the dissolution of our marriage, I, Plaintiff, and Defendant entered into a Parenting Consent Agreement of joint custody (although unequal parenting time in favor of Defendant) and legal decision-making authority, that gave me Plaintiff Tuesday and Friday evenings with our daughter and the Defendant all other days and most holidays, and full legal decision-making to the Defendant.[4]

35. I do aver that I signed the Consent Agreement under economic and emotional duress and coercion, as the Defendant had moved our daughter to Utah against my consent, and was withholding our daughter from me to the point I was afraid I wouldn't see her again.

36. I do aver that I signed the Consent Agreement under coercion, deception, fraud and swindle, as I was cunningly coerced into believing the commands by the Defendant's attorney and the administrators of the Family Court Division of the SUPERIOR COURT OF ARIZONA were lawful authorities, not foreign actors pretending under the color of law (See 18 U.S.C. § 241 and § 242). I have learned they were only fraudulently appearing to be lawful officials.

    (a) *"Because of what appears to be a lawful command on the surface, many Citizens, because of their respect for what appears to be law, are cunningly coerced into waiving their rights due to ignorance."* Sims v. Aherns, 271 SW 720 (1025)

37. I do aver that in my Affidavit's, now unrebutted and standing as judgment, I have rescinded, repudiated, and removed my sovereign consent from all previous parenting agreements, consent decrees, or contracts for fraud and swindle operating under the "color of law", as there was never a moment I wasn't under threat, duress, or coercion, placed upon me by the Defendant, her attorney's, or the *de facto* governmental services corporations operating under "color of law" under the Named Persons STATE OF ARIZONA, COUNTY OF MARICOPA, SUPERIOR COURT OF ARIZONA, and ARIZONA DEPARTMENT OF ECONOMIC SECURITY (DIVISION OF CHILD SUPPORT ENFORCEMENT.

38. No contract with my sovereign consent exists with any of the Named Persons in Paragraph 37.

**A Peaceful Co-Parenting Relationship**

39. Since dissolution of the marriage, the Defendant and I have lived and enjoyed co-parenting relationship that has not followed the original parenting time or decision-making arrangements in the original consent agreement.

40. We have mutually agreed to share, and practiced equal 50/50 parenting time with our daughter, following the schedule of seven (7) days with the Plaintiff and seven (7) days with the Defendant.

41. We have mutually agreed to share, and have practiced joint legal decision-making. For example: it was I, the Plaintiff, who found and secured a spot in our daughter's Christian Preschool and Kindergarten.

---

[4] Annex 4 – Consent Agreement FC2017-003309

42. In or around the fall of 2021, while our daughter was enjoying her week with the Defendant, the Defendant called me in tears asking me to come pick up our daughter.

43. The Defendant, visibly emotional, expressed in the hallway of her apartment that having our daughter for seven (7) consecutive days was too difficult on her.

44. I took our daughter home with me that day so the Defendant could care for herself.

45. The Defendant and I agreed to change to a 5-2-2-5 schedule. I would have our daughter every Monday and Tuesday, and the Defendant would have her every Wednesday and Thursday. We would alternate every other weekend (Friday, Saturday, Sunday).[5]

46. This has been the schedule we have followed since, except for sporadic disruptions when the Defendant has not honored it.

47. Our daughter has thrived in this schedule, as it gives her structured, secure, maximal, and equal time with her father and brother, and with her mother, without many days in between.

48. Our daughter enjoys a deep, secure bond and loving relationship with me her father, her brother, and a loving relationship with her mother. All three of us make up her "family." All three of us have been an active, vital, intimate, meaningful and ongoing part of her entire life.

49. Our daughter enjoys a large, secure, and loving extended family on both her father's side (grandparents, aunts, uncles, cousins, friends), and her mother's side (grandparents, aunts, uncles, cousins, and friends).

**Beginning of Custodial Interference, Parental Alienation & Harassment**

50. On Saturday, January 22, 2022, we had a birthday party for our daughter.

51. The Defendant planned and organized most of it and asked me to help run the activities of the party, which I did.

52. I, Plaintiff had to leave ten (10) minutes before the party ended to take my son to his basketball game. This infuriated the Defendant.

53. Later that afternoon, while I was at home with my son and girlfiend, the Defendant called me noticeably upset and began to verbally harass me over the phone, blaming me for "rushing" the party after she had planned it weeks in advance, and accusing me of not being a good father, but a "narcissistic" "dead beat dad" to our daughter.

54. After several minutes of patient listening, and many attempts at deescalating the Defendant, I told the Defendant that she was crazy to think I intentionally tried to ruin and rush the party she planned out of "selfishness" or a lack of care for our daughter, or that the party was ruined because we had to leave ten minutes early, and I hung up the phone.

55. The following Monday, January 24, 2022, the Defendant, still upset from the weekend, decided she would take our daughter home from dance with her on my scheduled evening with her. I did not consent to it.

56. After the dance class, outside at the Fred Astaire Dance studio on Tatum and Greenway Road, the Defendant, visibly emotional and out of control, said she was no longer going to honor our 50/50 schedule as it was *"no longer working for her"*, saying there was no way I could "prove it" to the court. Directly saying *"How are you going to prove it?"*

---

[5] Annex 5 – Text Messages Re: Parenting Schedule

57. I told the Defendant I did not want to involve the Court and would prefer to come to an equitable agreement in peace and honor.

58. The Defendant proceeded to mock me by saying *"peace and honor…peace and honor…blah blah blah bullshit".*

59. The Defendant then verbally threatened and harassed me, attempting to intimidate me by threatening blackmail, libel and slander, saying she would release or *"mistakenly leak"* discreet private details, pictures and/or videos of me that she claims to have stored and backed up on her cell phone or computer, to her *"entire contact list"* (and by inference our community, friends, and family) if I made any attempt to claim and protect my parental time with our daughter.

60. I tried to deescalate the Defendant before finally saying I wasn't going to participate in the violent conversation in front of our daughter, as I did not want to cause our daughter emotional distress of seeing one of her parents verbally abuse and denigrate another parent.

61. The Defendant then grabbed our daughter by the hand and took her home with her.

62. A week later, on January 31, 2022, the Defendant signed under the penalty of perjury claiming to have no income, and filed with the CLERK OF SUPERIOR COURT IN MARICOPA COUNTY a Petition to Modify Child Support, asking for over 1,000% increase, $869.00 every month from me.[6]

63. I have no record or evidence that the Defendant is not committing perjury and fraud by claiming to not have an income.

64. Substantial evidence suggests that the Defendant must have some form of income as she lives in a luxury two-bedroom apartment in North Phoenix where rents are over $2,000 per month, promotes her business success on social media and podcasts, has gone on multiple out-of-state vacations and trips in the last couple months, and is constantly buying our daughter new gifts and toys.

65. I have no record or evidence that the Defendant is not being paid by Dr. Ray Johnson, MD of Prescott, Arizona for services rendered to him and his businesses, or any other forms of employment, as I have overheard the Defendant say out loud, she is being paid by Dr. Johnson and the Defendant has gone on a personal visit to Dr. Johnson's out of state luxury cabin.

66. In escalated retaliation to this incident at the dance studio on January 24, the Defendant began to engage, and continues to engage to this day, in a pattern of behavior that I, Plaintiff, believe violates ARS 13-1302 A. 1. and A.3. Custodial Interference, taking and withholding our daughter from me on numerous occasions between January 24th and March 25th, and completely cutting me off and withholding her from me since March 25th until the present.

67. I am concerned the Defendant's expressed malicious guise of "protecting our daughter from me" in accordance with our "daughter's wishes", is intentional Parental Alienation motivated solely by her own malevolence and personal feelings toward me and a desire to exclude me from our daughter's life, that is causing immediate and potentially permanent emotional and psychological harm our daughter, constituting child abuse and domestic violence.

---

[6] Annex 6 – Petition to Modify Child Support

68. The Defendant has engaged in, and continues to engage in, a deliberate plan to keep our daughter from her lawful and equitable time with me, inflicting emotional and psychological abuse on our daughter and me by employing various methods and tactics to do so, such as:

    (a) taking her out of school in the middle of the day on the days I am scheduled to pick her up (Tuesdays and Fridays),

    (b) not taking her to school at all on the days I am scheduled to pick her up (Tuesdays and Fridays),

    (c) taking her on vacation or out of state,

    (d) scheduling sleepovers and play dates with our daughter's friends on days/evenings when I am scheduled to have her,

    (e) having friends watch our daughter instead of letting her be with me, when the Defendant has other plans,

    (f) evasive activities such as not taking her to school, or to dance class, not responding to any of my communication and text messages when I seek our daughter's whereabouts in order to pick her up and/or request to see her

    (g) keeping her from me on my weekends,

    (h) pretending not to be home by not answering the door when I attempt to pick her up,

    (i) verbally and publicly abusing and denigrating me in front of our daughter.

69. On Monday January 31, 2022, the Defendant picked up our daughter from my house at 7:30 and took her to school, then picked her up from school without telling me. I drove to the school unaware that she had been picked up.

70. On Friday February 11, 2022, the Defendant kept our daughter home from school without notifying me. I was told by our daughter's teacher that she had not come to school that day.

71. On Saturday February 12, 2022, the Defendant scheduled a sleepover with a friend of our daughter at the Defendant's house and kept her there on Sunday February 13, during my scheduled weekend.

72. On Monday February 14, 2022, the Defendant picked up our daughter from school without notifying me on my scheduled day.[7]

73. The following weekend, on Friday February 18, 2022, it was the Defendant's weekend with our daughter per the agreement above. I received a call at 6:04pm from an administrator at our daughter's school saying our daughter had not been picked up from school.

74. I immediately jumped in the car and drove to pick her up and keep our daughter with me that night and through the whole day Saturday February 19, until 12:43p.m. on Sunday February 20, without hearing from the Defendant.

75. On Sunday the February 20, 2022, the Defendant came by my private home to pick up our daughter at 12:43pm looking visibly distressed, proceeding to yell, threaten and verbally accost me for "not picking up our daughter" and leaving her at school, apparently assuming I should just be following the made up schedule in her mind, when in fact, it was her weekend with our

---

[7] Annex 7 – February School Sign Out Sheet

daughter, and when in fact I have never left our daughter at school, and when in fact I would happily pick up our daughter upon request or knowing I was needed to, any day at any time, as I work from home and love spending extra time with her, and when in fact I did not hear from her at all on the Saturday either.

76. During the same altercation on Sunday February 20, 2022, the Defendant, right in front of our daughter (bringing her to tears), aggressively began gathering up some of our daughter's toys and belongings from her bedroom in my home (including her favorite doll she received at Christmas), calling me a "sociopath" and "narcissist", and threatening that she would be filing for sole custody to take our daughter away from me for good.

77. I told the Defendant I would not engage in a violent argument in front of our daughter but would be happy to discuss things with her in private or when her anger had subsided.

78. I proceeded to pick our daughter up, hold her and give her a hug to comfort her and ease her fear in the moment when the Defendant yelled out "don't manipulate our daughter".

79. The next day, Monday February 21st, the Defendant sent me an email titled "Parenting Scheduled for [Name of Our Daughter]". The Defendant attached the original consent agreement and stated in her email:

> "Scott, Though we have tried a couple of different parenting schedules, it seems that the original one we agreed on in the Decree is the best for Jocelyn. I have attached the decree for your reference, for both parenting and holiday schedules. I think it would be best to stick to the decree as we have had a difference in opinion, to what an "agreement" is and, intention behind it."[8]

80. While I do not consent with the Defendant's attempt to control and amend the parenting schedule whenever and however she feels like it, it is clear by the email the Defendant knows there is a joint-custody parenting agreement in place as she attached it and said that she would follow that agreement.

81. The Defendant has not even followed the agreement she referenced in her own email, neither in the weeks prior to the email, at the time of her email, nor any time since her email.

82. In response to my reply with an offer of compromise to work out an equitable schedule, the Defendant responded with another email stating:

> "I will adhere to what our legal parenting time agreement is, lined out in the decree. To ensure we show up for her I will plan on you picking her up from school on Tuesdays and Fridays. I am happy to pick her up as well if you are not available."[9]

**Escalating Harassment, Infliction of Emotional Distress, Parental Alienation, Child Abuse, Domestic Violence, Kidnapping**

83. In March, the Defendant's pattern of behavior continued as her own anger and malice toward me escalated into domestic violence, including but not limited to, intentional infliction of

---

[8] Annex 8 – February 21st Defendant's Email
[9] Annex 9 – February 22nd Defendant's Email

emotional distress, invasion of privacy via public disclosure of private facts, the use of electronic communications to terrify, intimidate, threaten, and harass me and other's in relationship with me, in Violation of ARS 13-2916; the threatened and executed unlawful disclosure of images depicting states of nudity with the intent to harm, harass, intimidate, threaten, and coerce in Violation of ARS 13-1425 A. 1. 2. and 3; threatening or intimidation in violation of ARS 13-1202; disorderly conduct in violation of ARS 13-2904; and a pattern of series of acts of verbal, written, electronic, and telephonic harassment with the intent to terrify, intimidate, and cause severe emotional duress, while at various physical locations such as my home and our daughter's dance studio, in Violation of 18 USC § 2261A – Stalking and ARS 13-2921 – Harassment.

84. On March 21st, 2022, I received an electronic email from the Defendant asking for my share of parenting expenses for our daughter's dentist appointments and dance lessons. In the email, the Defendant threatens using the law to injure my professional insurance licenses, send me to prison, and cause significant harm to my honor and reputation. The Defendant claims in the email to be **"my own brand of dragon, that isn't going away"**, clearly inferring her intent that she is going to intentionally continue to inflict emotional duress and damage upon my life. She writes:

> *"I did learn that "Failure of Parent to provide for a Child" aka "deadbeat dad law" LOL That's a real thing here in AZ is actually a class VI felony which could result in 1.5 years in prison.... Yikes! And professional licenses revoked, etc. It seems like they take the whole parenting thing pretty seriously here, unless of course, I missed the memo that Scott Bradley is exempt to all laws, rules and regulations or deemed "fraudulent and/or annulled" I do recall you saying that, hmm...or was that Sean Becksmith? It can be tricky to tell, when 2 inches is the difference. Rest assured, that you won't have to cal [sic] me "Sherry"[her mother] in an attempt to gaslight me. **I'm my own brand of dragon, that isn't going away.** Just in case you lost it here is a link to my Venmo account. (Smiley Emoji, Kiss Emoji) XOXO"[10]*

85. I do aver that despite the Defendant's actions, I have always paid, and continue to pay my share of our daughter's medical, social, school, and other expenses, even up to and through the time of this claim.[11]

86. On March 26th, 2022, the Defendant received my initial response to her petition for a 1000% increase in child support in the form of a Lawful Notice and Affidavit of Truth and Facts. Upon receipt the defendant sent me a text message with three laughing emojis.

87. That same evening, March 26th, I received another text message from the Defendant at 7:38pm, while at the movies with my son and girlfriend. In the text, the Defendant claims to have

---

[10] Annex 10 – March 21st Defendant's Email
[11] Annex 11 – Venmo Receipts

Scott-Thomas; .Bradley: Verified Complaint and Demand for Judgment                Pg. 12 of 38

followed through on her previous threat in Paragraph 59, to blackmail and intimidate me by releasing private pictures.

88. In the text message, the Defendant claims to have sent discreet private details, pictures, and or/videos of me, she refers to as *"love notes"*, to my girlfriend's father, who lives in another state and has no direct or indirect involvement in anything related to the Defendant's life.

89. This would have required deliberate intent on the Defendant's part to research and discover who my girlfriend's father is, and even more research locate him in another state, and obtain his contact information.

90. It is clear the Defendant's malicious actions and communication of her actions to me, is a deliberate attempt to intentionally inflict emotional distress, defame, injure, threaten, terrify, intimidate, and harass me, along with a malicious attempt to damage my reputation, to injure my current relationship with my girlfriend and my girlfriend's father, and to injure my right to peace and happiness with people to close to me. The Defendant's text read:

> *"I sent a couple of love notes to Mr. Literas…he will be so proud to know who is fucking his daughter. (Kissing face emoji)"*[12]

91. On April 10th, 2022, I received another email from the Defendant requesting my share of new parenting expenses. In the email the Defendant continues her malicious threats to intimidate and harass me, clearly to cause emotional and physical harm, projecting her own malicious thoughts toward me upon our daughter. She writes:

> *"Marlene [her former attorney now withdrawn upon receipt of my Affidavit] said that your governing body uses the term "extortion"…God help you. It's one thing not to pay the crumbs of $85/month but to term it extortion, the devastation that I will absolutely protect [Name of our daughter] from ever having knowledge of. Though it is telling what destructive measures an asshole will take in an attempt to get out of supporting his child financially. However, my gut tells me this is your severely neglected subconscious, that walks hand in hand with your very conscious addict, collectively cannot process that, THE ONE GIRL should love and adore you unconditionally actually, pleads to not be with you…There aren't enough reams of paper that can change that. Even more pathetic that you used your time with her to make those copies…she's smart Scott, she had already told me about going to "Ashley's work" and the copies that had my name on them. (Eye rolling emoji)"*[13]

92. On Monday April 18th, 2022, I attended my daughter's dance practice, as I always do, at Fred Astaire Dance Studio located at 4855 E Greenway Rd., Scottsdale, AZ 85254, with my girlfriend Ashley Havrilla as a second witness.

---

[12] Annex 12 – March 26th Defendant's Harassing Text Message
[13] Annex 13 – April 10th Defendant's Email

93. Upon walking into the studio, we greeted my daughter who was very excited to see us both and came running up to us to give us hugs.

94. When the Defendant saw us, she immediately approached us and got in our faces in front of other parents and the studio employees, and began to verbally harass and intimidate us in an attempt to intentionally inflict emotional distress that would force us to leave, saying:

> *"How dare you show up here pretending and putting on a front that you're a good father. You need to leave. You are not welcome here."*

95. We initially attempted to diffuse the Defendant, politely said we were not interested in a public confrontation in front of my daughter or anyone else, and were simply here to watch and support my daughter's dance, before walking away to another part of the studio, ignoring the harassment.

96. The Defendant followed us and proceeded to stand right next to us and get in our faces and verbally harass us for the first ten minutes of my daughter's dance class. During this emotionally violent public attack, the Defendant made various loud verbal threats, lies, and denigrating comments for all to hear.

97. The Defendant got in my girlfriend's face, verbally harassing her saying:

> *"Do you want to know who you are dating? Did he tell you about the time he got on Tinder while we were married? Or the time he was arrested and charged with fraud while I was eight months pregnant? You know he's just trying to use you to get to church leadership. You're just his latest victim honey. Did he tell you that I have sole custody of our daughter because he doesn't know how to keep his cock in his pants? You need to leave right now, you're not welcome here…"*

98. Continuing her public verbal harassment, the Defendant got in my face saying:

> *"I have sole custody asshole. I can do whatever I want with our daughter. I can move her out of state if I want. I can keep her from seeing you. I'm going to file a motion to dismiss this case [referring to child support increase], so you have to crawl back into the hole where you came from. WE don't want you in our life [projecting her hatred for me onto our daughter]."*

99. The public verbal and emotional assault continued unrestrained for ten minutes as we attempted to ignore her harassment. Finally, the Defendant stopped and went across the studio to practice her own dancing while we watched my daughter's class.

100. During the class, my daughter kept looking over at us, and smiling, blowing us kisses, and making heart shapes with her hands.

101. Then towards the end of the forty-five-minute class, the Defendant came back for more and continued to harass us in our faces trying to intimidate and chase us out of the studio again.

102. After the class ended, my daughter came running up to me to give me a hug and my girlfriend a big hug, while the Defendant hovered near in the background.

103. After we talked to my daughter for about five minutes we proceeded to walk out of the studio.

104. While we were walking out, the Defendant publicly taunted us in our faces in front of everyone, and in a sarcastically nice voice said: *"It was good seeing y'all. I hope you come back soon",* before flipping her middle finger at us while holding our daughter in her arms.

105. Upon getting into my truck, my girlfriend broke down in tears from the verbal and emotional assault.

106. Ashley Havrilla has provided a Second Witness Affidavit[14] of the encounter.

107. The Defendant's malicious ongoing harassment since January has caused extreme emotional distress on me, my girlfriend, my son, my daughter, and our entire family.

**Escalated Custodial Interference, Kidnapping, Parental Alienation**

108. Since receiving my First Affidavit, the Defendant has systematically completely cut me off from time with our daughter and withheld physical custody of our daughter from me by employing the various tactics in Paragraph 68, in a clear attempt to damage my relationship with my daughter through parental alienation and cut me out of her life.

109. It has been 59 days since March 25th, the last parenting time I had with my daughter.

110. It has been 120 days since January 24th, when the Defendant's custodial interference began.

111. During those 59 days, I have received no communication from the Defendant on my daughter's whereabouts, well-being, or activities except for one thirty (30) minute phone call on Easter and seeing her at her dance class twice.

112. The Defendant, has ignored, and continues to ignore, all my requests to see our daughter, inquiries to whether she is at school, and inquiries as to her whereabouts or wellbeing.

113. On Tuesday, March 29th, 2022, I arrived at our daughter's school early, 2:17pm, to pick her up right when she got out at 2:30pm. When I went to sign her out, I saw she was already signed out early by the Defendant, who lied and falsified the sign out sheet saying she picked her up at 2:30pm, but was already gone when I arrived at 2:17pm. The Defendant did not respond to my texts and requests to see our daughter. [15]

114. On Friday, April 1st, 2022, I arrived at our daughter's school only to find out from her teacher that our daughter was not taken to school that day. My attempts to contact the Defendant again went ignored and the Defendant withheld our daughter from me over the weekend.

115. On Monday, April 4th, 2022 – Thursday April 7th, 2022, the Defendant took our daughter on a vacation to Disneyland in California with her family. I had previously agreed to the trip out of honor and excitement for our daughter.

116. Upon returning on Friday April 8th, 2022, the Defendant did not respond to my requests to see our daughter. The same day, I contacted our daughter's teacher to discover that she was not at school all day again. The Defendant withheld our daughter from me over the weekend, again.

117. On Tuesday, April 12th, 2022, I arrived at our daughter's school to pick her up, only to discover that the Defendant took her out of school early.

---

[14] Annex 14 – Ashley Havrilla's Witness Testimony in form of Affidavit of Truth
[15] Annex 15 – March School Sign Out Sheet

118. On Friday, April 15th, 2022, our daughter was out of school for Good Friday. The Defendant knows Passover weekend and Easter Sunday are significant religious holidays for our family. The Defendant repeatedly ignored my attempts to see our daughter during the entire weekend. My son and I had to drop off flowers at the Defendant's front door for my daughter, when our knocks on the door went unanswered.

119. Finally, Sunday afternoon the Defendant allowed my daughter to Facetime me for thirty minutes. During the Facetime it was evident how much my daughter misses us and wanted to see what was in her Easter basket, but the Defendant wouldn't allow her to come over.

120. On Tuesday, April 19, 2022, I went to pick up our daughter from school again and the Defendant was standing inside the main lobby of the school to pick our daughter up before I could get her, clearly in a deliberate attempt to keep our daughter from me. Exercising prudence and self-control, wanting to avoid another publicly violent scene for my daughter, I remained in my truck.

121. On Friday, April 22, 2022, I went to pick up our daughter from school again, and once again the Defendant took her out of school early, signing her out at 1:20pm, in a deliberate attempt to keep our daughter from me. She then withheld our daughter from me all weekend.[16]

122. On Tuesday, April 26th, and Tuesday May 2nd, the Defendant picked up our daughter from school on my days to get her.

123. On Friday, April 29th, our daughter had a day off school. The Defendant kept her home with her on my day with our daughter, evading my attempts to see her.

124. On Monday, May 2nd, the Defendant was driving up to our daughter's dance class when she saw me in the parking lot walking into the dance studio. She proceeded to drive away and keep our daughter from attending her dance class for no valid reason other than to avoid seeing me.

125. On Friday, May 6th, I went to pick our daughter up from school and the Defendant wrote on the school sign out sheet that she is "traveling" Thursday May 5th – Tuesday May 10th, and won't be at school those days. I had no idea where my daughter was until my girlfriend said she saw the Defendant post on social media they were in Utah visiting her family.

126. On Tuesday, May 10th, and Friday May 12th, the Defendant picked our daughter up from school on my days. The Defendant kept her from us all weekend.

127. On Tuesday May 17th, the Defendant picked up our daughter from school again.[17]

128. I, Scott-Thomas; .Bradley, do affirm that there is no justifiable reason(s) for our daughter to be repeatedly removed from school early on Tuesday's and Friday's.

129. There is no justifiable reason for our daughter to be kept home from school on Tuesday's and Friday's.

130. It is clearly evident that the Defendant continues to engage in this behavior simply out of a spirit of malevolence, to keep our daughter from me, to cut me out of our daughter's life, and to inflict severe, consequential, emotional and relational harm upon me, my family, and my relationship with our daughter.

---

[16] Annex 16 – April School Sign Out Sheet
[17] Annex 17 – May School Sign Out Sheet

Scott-Thomas; .Bradley: Verified Complaint and Demand for Judgment          Pg. 16 of 38

131. The Defendant has kept our daughter out of school for at least eleven (11) days in the last two and a half months.

132. Our daughter has missed several family events including our family vacation camping trip that was her and her brother's big Christmas present that she was very excited about.

133. I do affirm that I am concerned that the Defendant is planning on, or will attempt, to move our daughter out of state with her without my consent, as she has done it before and has threatened it in the dance studio encounter.

**Parental Alienation is Domestic Violence and Child Abuse**

134. I am very concerned about the immediate and long-term damage this emotional abuse is causing to our daughter, as well as the harm that is being caused by the Defendant repeatedly keeping her home from school and taking her out of school early.

135. My daughter has a right to feel secure in her home, at her school, at her dance class, and wherever she is at without the fear of a violent emotional outburst by the Defendant, and without the emotionally harmful disruptions to her routine, schedule, and relationships with her family.

136. It is evident by the Defendant's actions and emails that the Defendant views her own home as our daughter's home but does not consider our daughter's emotional attachment to her home with me, and believes she's looking out for our daughter's best interest by alienating and isolating her from me. I believe this is causing an unhealthy attachment bond.

137. I am very concerned about the immediate and long-term damage this emotional abuse is causing to our daughter as a large volume of legal, medical, and psychiatric literature exists that prove Parental Alienation or Unhealthy Attachment Bond (as termed in psychology) is a serious form of Domestic Violence (as termed in the law) and Child Abuse in the form of Psychological Maltreatment.

138. The current Diagnostic and Statistical Manual of the American Psychiatric Association (APA) DSM-5, includes parental alienation as a specific form of "child psychological abuse", on par with physical and sexual abuse.

   o *"Induced parental alienation is a specific form of psychological child abuse, which is listed in DSM-5, the current Diagnostic and Statistical Manual of the American Psychiatric Association (APA), under diagnostic code V 995.51 "child psychological abuse". Untreated induced parental alienation can lead to long-term traumatic psychological and physical effects in the children concerned."* [https://pubmed.ncbi.nlm.nih.gov/29654470/] citing [von Boch-Galhau, Wilfrid. "Parental Alienation (Syndrome) – Eine ernst zu nehmende Form von psychischer Kindesmisshandlung" [Parental Alienation (Syndrome) - A serious form of child psychological abuse]. Neuropsychiatrie : Klinik, Diagnostik, Therapie und Rehabilitation : Organ der Gesellschaft Österreichischer Nervenärzte und Psychiatervol. 32,3 (2018): 133-148. doi:10.1007/s40211-018-0267-0]

   o *"Causing parental alienation in a child is on par with physical and sexual abuse. It is* <u>*considered child psychological abuse and is subsumed in DSM-5*</u>

*(V995.51).*[4] *Parental alienation is real, definable, and toxic. In severe cases, it is so malignant that it can undermine a child's psychological development. It is not hyperbole to say it can be catastrophic."*

[https://www.contemporarypediatrics.com/view/the-toll-of-parental-alienation-on-children by Alan D. Blotcky, PhD Clinical & Forensic Psychologist]

139. Many expert child and family psychologists, like Joan T. Kloth-Zanard, GAL, RSS, ABI & LC Executive Director and Founder of PAS Intervention, author of Where Did I Go Wrong? How Did I Miss the Signs? Dealing with Hostile Parenting and Parental Alienation, consider Parental Alienation a severe form of Psychological and Emotional Maltreatment.

*"When a parent is denied a relationship, it is the same as isolating the children from the parent. It can be legally termed as an alienation of affection, criminally referred to as domestic violence and psychologically referred to as Parental Alienation, Parental Alienation Syndrome… "When a parent deliberately sabotages a relationship with the Targeted Parent by refusing to allow visits, calls, or any form of healthy communication, with no evidence of abuse, this is called ISOLATION. Furthermore, when a parent has initially allowed continuous contact with the children during the separation and divorce period, but reneges on this refusing them visitation…this is isolation and abuse…**there is no doubt this is isolation and thus psychological abuse.**"…"If…the alienator continues to insult, verbally abuse and denigrate the child's Targeted Parent in front of them, this behavior DEGRADES and DEVALUES someone the children once respected and loved and in most cases, secretly want a relationship with. This disdain and disrespect for the TP in front of the child is another form of Psychological Maltreatment as it permanently affects their view of the Targeted Parent, which transfers to their view of themselves."…Alienation and Denigration. No matter what it is named, it is not only abusive to the Targeted Parent (TP), but also abusive to the children. The Alienating Parent (AP) sees the children and/or their relationship with the other parent as a possession that they have power over, which in turn controls the TP. By refusing to allow a healthy relationship to exist between the children and the TP, the AP maintains a sense of control and what they feel is a bargaining chip to possess the other parent. Whether it is returning the TP to the AP's life or revenge 'for not loving them anymore', the AP has absolutely no regard for any of the other victims. Their only goal is to destroy the TP anyway they can…PAS can be further described as **a form of psychological kidnapping** where the child's mind has been forced to prejudicially believe and discriminate against the other parent. This is perpetrated by creating fear, not only of the TP/outsider parent, but of the parent whom the child must reside with, or as [PAS Expert, Child Psychologist Dr. Richard] Gardner calls it, the "hostage taker" parent. It is also called the Stockholm Syndrome and best compared to the Patti Hearst kidnapping… "By refusing to allow the children to*

*have a relationship with the Targeted Parent, for no reason other than their own need to control the ex-spouse, the Alienating Parents are denying them the basic elements of stimulation, emotions and availability with the Targeted Parent. In fact, the Targeted Parent has little to no opportunity to defend themselves…Though they will have you believe that they or the children feared for their lives and that the Targeted Parent was abusive, this is usually unsubstantiated or proven by the courts to be a fabrication. With no basis for this denial, the Alienator refuses their children a warm and loving relationship with the Targeted Parent. Thus, it causes UNRELIABLE and INCONSISTENT PARENTING.* ___**Since the children have been denied a relationship with the Targeted Parent, they have also been denied a reliable and consistent parenting situation and the Alienating Parent has proven that they cannot parent consistently and reliably in the supporting of a two-parent relationship with the children."___*…"When you put it all together, the DSM sums up the Alienator quite nicely under Cluster B Personality Disorder, Antisocial Personality Disorder, (301.7).* ***The Alienating Parent willfully and without regard to the child or the targeted parent's welfare, or the innocent extended families' welfare, continually violated their rights and disregarded their needs for a relationship.*** *The Alienating Parent uses and exploits the children. The Alienating Parent isolates the child from a nurturing parent and family. The Alienating Parent denies the child their basic needs of love and belonging from the Targeted Parent. The Alienating Parent thus neglects the child's mental welfare. They rejected the child's and Targeted Parent's testimony of love and need for each other. The Alienating Parent terrorizes and corrupts the child. The Alienating Parent callously puts their own desires, wants and needs above those of everyone else including their own child.* ***This all adds up to one thing, PAS is Domestic Violence in the form of Psychological Maltreatment.*** [by Joan T. Kloth-Zanard, GAL, RSS, ABI & LC Executive Director and Founder of PAS Intervention (Author of "Where Did I Go Wrong? How Did I Miss the Signs? Dealing with Hostile Parenting and Parental Alienation"); http://www.naasca.org/2015-Articles/061415-ParentalAlienation=DV-JoanKloth.htm][18]

140. The Arizona Department of Child Safety considers "Emotional Abuse" and "Emotional maltreatment" among one of the major categories of child abuse and neglect:

   (a) *Emotional abuse is evidenced by severe anxiety, depression, withdrawal, or improper aggressive behavior as diagnosed by a medical doctor or psychologist and caused by the acts or omissions of the parent or caretaker (ARS §8-201).*

   (b) *Emotional maltreatment includes blaming, belittling or rejecting a child, constantly treating siblings unequally, and persistent lack of concern by the caretaker for the child's welfare. Emotional maltreatment is rarely manifest in*

---

[18] Chapter 3 "Parental Alienation is Domestic Violence" from "Where Did I Go Wrong? How Did I Miss the Signs? Dealing with Hostile Parenting and Parental Alienation by Joan T. Kloth-Zanard

*physical signs, particularly in the normal school setting; speech disorders, lags in physical development, and failure to thrive syndrome are physical indicators of emotional maltreatment. More often it is observed through behavioral indicators, and even these indicators may not be immediately apparent.*

[https://dcs.az.gov/resources/faq/question-categories-abuse-and-neglect-0]

141. The Courts have recognized the seriousness of parental alienation as well.

(a) **1991 Supreme Court of Florida, *Schutz v. Schutz*.** In this groundbreaking case, the court ruled that a wife could no longer legally speak badly about her husband to her children. They determined that this kind of order did not breach the right of the parents to free speech as ensured in the First Amendment: *"Therefore, not only is the incidental burden placed on her right of free expression essential to the furtherance of the state's interests as expressed in chapter 61, but also it is necessary to protect the rights of the children and their father to the meaningful relationship that the order seeks to restore...construing the order as we do, we find no abuse of discretion by the trial court, nor impermissible burden on the petitioner's first amendment rights."*

(b) **1996 District Court of Appeal of Florida, Fifth District, *Tucker v. Greenberg*.** This court ruled that alienation on the part of a parent was harmful to the child's health. In language reminiscent of that used to prove parental alienation syndrome, the court stated: *"The Former Wife's interference with the Former Husband's visitation and access to his children, in addition to her negative parenting decisions over the years have had negative impact on the children's behavior at school; their level of self-assurance and their feelings towards their father."*

(c) **1997 Indiana State Appellate Court case, *Hanson v. Spolnik*.** In this successful appeal, attorneys cited the need to reconsider divorce terms based upon *"whether one parent's animosity and conduct towards another may justify the modification of a joint child custody arrangement."*

(d) **2011 New Hampshire State Supreme Court case**, *Matter of James J. Miller and Janet S. Todd*, the court cited the Vermont State Supreme Court by stating that even though clearly well-intended, the ruling of the court successfully disregarded a parent's deliberate isolation of a child from the other parent. According to this court, the lower court's decision conveyed the deplorable message that others may, with liberty, take part in analogous misbehavior. The court also stated that if permitted to be intact, the lower court's ruling would invalidate the belief that the child's best interests are broadened by means of a strong and caring relationship with both parents. This case even quoted constructively a judgment from a Vermont case, which was stated as follows: *"**Across the United States, the tremendous authoritative weight views that one parent's behavior that is inclined to isolate the affections of the child from the other is so detrimental to the child's wellbeing as to be the bases for a refusal***

*of custody to, or a modification of custody from, the parent who is culpable of such behavior."* In addition, the court cited its judgment in a previous New Hampshire case, which stated the following: *"The hindrance by a custodial parent of visitation between a child and the noncustodial parent might, if incessant, represent conduct so contradictory with the best interest of the child as to produce a potent likelihood that the child will be hurt."*

142. I have no evidence or record that the merits and findings of the courts of other states should not apply to judgments in other states as the Supreme Court has said on numerous occasions, that judgment of one state court must be recognized by other state courts as final.

143. I am a victim of the Defendant's intentional Parental Alienation and Domestic Violence.

144. More seriously, our daughter is a silent victim of the Defendant's intentional Parental Alienation and Child Abuse in the form of psychological abuse.

    (a) *"Of all tyrannies, a tyranny sincerely exercised for the good of its victims may be the most oppressive. It would be better to live under robber barons than under omnipotent moral busybodies. The robber baron's cruelty may sometimes sleep, his cupidity may at some point be satiated; but those who torment us for our own good will torment us without end for they do so with the approval of their own conscience."* – C.S. Lewis

### Damages

145. I, Scott-Thomas; .Bradley, do affirm as a direct and proximate result of the Defendant's actions, that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, significant financial damages from legal expenses and having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right to peace, happiness, and enjoyment of life.

146. Furthermore, our ability to plan or schedule family activities has been terrorized and we have had to cancel family plans and activities on multiple occasions.

147. I, Scott-Thomas; .Bradley, have suffered severe emotional distress from the loss of the mutual enjoyment of love and life with my daughter.

148. I have lost time with my daughter that I will never get back.

149. My daughter has lost time with her father and brother that she will never get back.

150. We have lost time as a family that we will never get back.

151. My physical, mental, financial, and emotional injuries are ongoing daily.

152. These facts show by *prima facie* proof my personal *injury-in-fact*.

153. I have shown by these facts a connection between my injury and the defendants conduct explained of.

154. It is an indisputable material fact, by the Defendant's own words and email, that she knows we share joint physical custody.

155. It is an indisputable material fact that the Defendant is not honoring joint custody.

156. It is an indisputable material fact that the Defendant has violated ARS 13-1302 Custodial Interference.

157. It is an indisputable material fact that violation of ARS 13-1302 constitutes an act of Domestic Violence pursuant to ARS 13-3601 A.

158. Pursuant to ARS 25.403.03 A. *"Joint legal decision-making shall not be awarded if the court makes a finding of the existence of significant domestic violence pursuant to section 13-3601."*

159. The Defendant's only affirmative defense would be if our daughter was in immediate physical danger from me <u>and</u> an emergency petition for a scheduled hearing had been filed.

160. Our daughter is not in immediate danger from me and an emergency petition has not been filed.

161. There are no disputable material facts.

162. I believe a likelihood exists that my injury will be redressed by a favorable decision.

163. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

164. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend a minimum of six months psychiatric counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence...the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

## Cause 1
### Kidnapping (common law), Custodial Interference ARS 13-1302

165. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

166. *"A person commits custodial interference if, knowing or having reason to know that the person has no legal right to do so, the person does one of the following: 1. Takes, entices, or keeps from lawful custody any child...who is entrusted by authority of law to the custody of another person..or 3. If the person is one of two persons who have joint legal custody of a child, takes, entices, or withholds from physical custody the child from the other custodian."* ARS 13-1302 A.1. and A.2.

167. Pursuant to the Defendant's email on February 21st, the Defendant knows or ha[s] reason to know that she has no legal right to take and withhold physical custody of our daughter from me, the Plaintiff.

168. The Defendant has knowingly engaged in a pattern of behavior in violation.

169. The Defendant's ongoing pattern of behavior clearly demonstrates her actions are with willful intent to engage in the behavior and not out of confusion or mistake.

170. The only affirmative defense is if the child was in immediate danger <u>and</u> an emergency petition for a scheduled hearing had been filed.

171. Our daughter is not, nor has she never been, in immediate danger from being in my physical custody. An emergency petition for a scheduled hearing has never been filed.

172. Therefore, the Defendant's actions constitute a violation of ARS 13-1302, and are ongoing.

173. Violation of ARS 13-1302 constitutes an offense of Domestic Violence pursuant to ARS 13-3601 A.

174. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-1302 , that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right to peace, happiness, and enjoyment of life, and my sacred parental rights and rights to enjoyment of life with our daughter.

175. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

176. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence…the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

## Cause 2

### Intentional Infliction of Emotional Distress

177. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

178. I have shown by the preceding paragraphs that the Defendant has engaged in a pattern of behavior through unwarranted text messages, emails, custodial interference, private and public

harassment, and various other means, that clearly demonstrates the Defendant's actions have been, and are still ongoing, with intentional disregard to my emotional well-being.

179. It is reasonable to believe that the Defendant knows, or should know, that it is reasonably foreseeable that her actions would cause severe emotional distress.

180. The Defendant's conduct of reaching out to my girlfriend's father, publicly and privately terrorizing me, harassing me and my girlfriend at our daughter's dance class, threatening me over email and text message, and taking and withholding our daughter from me for over two months, are outrageous, indecent, atrocious, odious, uncivilized, and intolerable.

181. I, Plaintiff, have suffered severe emotional distress as a direct and proximate result of the Defendant's Intentional Infliction of Emotional Distress.

182. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

183. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence…the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

### Cause 3

### Threatening or Intimidation ARS 13-1202

184. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

185. *"A person commits threatening or intimidation if a person threatens or intimidates by word or conduct: 1. To cause…serious damage to the property of another." ARS 13-1202 A. 1.*

186. I have shown by the preceding paragraphs that the Defendant has engaged in a pattern of behavior of threatening and intimidating me by word and by conduct, to cause severe damage to my sacred Constitutionally-protected rights, which are the most valuable forms of property.

187. Therefore, the Defendant's actions constitute a violation of ARS 13-1202.

188. Violation of ARS 13-1202 constitutes an offense of Domestic Violence pursuant to ARS 13-3601 A.

189. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-1202 , that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right of privacy, right of peace, happiness, and enjoyment of life, and my sacred parental rights and rights to enjoyment of life with our daughter.

190. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

191. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence…the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

### Cause 4

### Invasion of Privacy (Common Law) Unlawful disclosure of images depicting states of nudity or specific sexual activities ARS 13-1425

192. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

193. *"It is unlawful for a person to intentionally disclose an image of another person who is identifiable from the image itself or from information displayed in connection with the image if all of the following apply:1. The person in the image is depicted in a state of nudity or is engaged in specific sexual activities. 2. The depicted person has a reasonable expectation of privacy. Evidence that a person has sent an image to another person using an electronic device does not, on its own, remove the person's reasonable expectation of privacy for that image. 3. The image is disclosed with the intent to harm, harass, intimidate, threaten or coerce the depicted person." ARS 13-1425 A. 1. 2. 3.*

194. The Defendant has threatened to "mistakenly leak" private images of me, Plaintiff, depicted in a state of nudity or in specific sexual activities.

195. The Defendant has alleged that she did send private images of me to my girlfriend's father.

196. The alleged material would be highly offensive to reasonable persons.

197. The material is not one of legitimate concern to the public or my girlfriend's father.

198. I, Plaintiff, has a reasonable expectation of privacy that reasonably includes the Defendant not sending private images of me to others.

199. Based on the Defendant's prior threatening and boastful text message of her actions, it is clear the Defendant engaged in the behavior and actions with intent to harm, harass, intimidate, threaten, terrorize and coerce me to let her get away with her ongoing custodial interference.

200. The Defendant's actions are a violation of ARS 13-1425.

201. Violation of ARS 13-1425 constitutes an offense of Domestic Violence pursuant to ARS 13-3601 A.

202. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-1425,, that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right to peace, happiness, and enjoyment of life.

203. I, Scott-Thomas; .Bradley, do aver that as a direct and proximate result of the Defendant's violation of ARS 13-1425, I have suffered from emotional distress and relational distress in my having to deal with the matter with my girlfriend and my girlfriend's father.

204. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, for Injunctive Relief ordering the Defendant destroy all private personal images or electronic material she alleges to have of me, and cease and desist all threats, intimidation, harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

## Cause 5

### Disorderly Conduct ARS 13-2904

205. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

206. *"A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person: 1. Engages in fighting, violent or seriously disruptive behavior; or 2. Makes unreasonable noise; or 3. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person;" ARS 13-2904 A. 1. 2. 3.*

207. The Defendant has engaged in a pattern of behavior with deliberate intent to disturb the peace of our family, including but not limited to, engaging in violent or seriously disruptive behavior, and using abusive and offensive language.

208. The Defendant's actions constitute a violation of ARS 13-2904.

209. Violation of ARS 13-2904 constitutes an offense of Domestic Violence pursuant to ARS 13-3601 A.

210. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-2904, that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right to peace, happiness, and enjoyment of life.

211. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, for the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief ordering the Defendant cease and desist all threats, intimidation, harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

## Cause 6

### Use of electronic communication to terrify, intimidate, threaten or harass ARS 13-2916

212. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

213. "*It is unlawful for a person to knowingly terrify, intimidate, threaten or harass a specific person or persons by doing any of the following: 1. Directing any obscene, lewd or profane language or suggesting any lewd or lascivious act to the person in an electronic communication. 3. Otherwise disturbing by repeated anonymous, unwanted or unsolicited electronic communications the peace, quiet or right of privacy of the person at the place where the communications were received.*" ARS 13-2916 A. 1. 3.

214. The Defendant has engaged in a pattern of behavior with knowing and willful intent to seriously disrupt, terrify, intimidate, threaten, alarm, torment, terrorize, harass, and disturb my right of privacy and peace, and that of my family.

215. The Defendant has used unsolicited electronic communications to engage in behavior.

216. The Defendant's actions constitute a violation of ARS 13-2916.

217. Violation of ARS 13-2916 constitutes an offense of Domestic Violence pursuant to ARS 13-3601 A.

218. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-2916, that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right of privacy, and to peace, happiness, and enjoyment of life.

219. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn

Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

220. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence…the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

## Cause 7

## Harassment ARS 13-2921

221. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

222. *"A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person: 1. Anonymously or otherwise contacts, communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses. 2. Continues to follow another person in or about a public place for no legitimate purpose after being asked to desist. 3. Repeatedly commits an act or acts that harass another person."* ARS 13-2921 A. 1. 2. 3.

223. "Harassment" is a course of conduct, knowing and willful, directed at a specific person that is either seriously alarming, seriously disruptive, seriously tormenting, or seriously terrorizing to the specific person.

224. The Defendant has engaged in a pattern of behavior of repeated acts of harassment toward me and my family.

225. The Defendant's actions constitute a violation of ARS 13-2921.

226. Violation of ARS 13-2921 constitutes an offense of Domestic Violence pursuant to ARS 13-3601 A.

227. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-2921, that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters, situational depression, shame, public humiliation, and severe disruption to our family's

constitutionally-protected sacred right of privacy, and to peace, happiness, and enjoyment of life.

228. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

229. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence...the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

## Cause 8

### Domestic Violence ARS 13-3601

230. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

231. *"Domestic violence" means any act that is a dangerous crime against children as defined in section 13-705 or <u>an offense prescribed in</u> section...13-1202...13-1302...13-1425...section 13-2904, subsection A, paragraph 1, 2, 3...or section 13-2916, 13-2921... <u>if any of the following applies</u>: 1. The relationship between the victim and the defendant is one of marriage or former marriage or of persons residing or having resided in the same household 2. The victim and the defendant have a child in common. ARS 13-2921 A. 1. 2. 3.*

232. The relationship between the Defendant and me is one of "former marriage" and we "have a child in common." Therefore, it constitutes a domestic relationship.

233. The Defendant has engaged in a pattern of behavior that include offenses of ARS 13-1202, ARS 13-1302, ARS 13-1425, ARS 13-2904 A. 1. 2. 3., ARS 13-2916, ARS 13-2921.

234. The Defendant's violations of ARS 13-1202, ARS 13-1302, ARS 13-1425, ARS 13-2904 A. 1. 2. 3., ARS 13-2916, ARS 13-2921 constitute "Domestic Violence" pursuant to ARS 13-3601.

235. The Defendant actions constitute multiple, at least six (6) counts of Domestic Violence.

236. I, Scott-Thomas; .Bradley, the Plaintiff, do aver as a direct and proximate result of the Defendant's violation of ARS 13-3601, that I have suffered, and continue to suffer, severe damages including emotional distress, psychological distress, many nights of loss of sleep, financial damages from having to take several days off of work to deal with these matters,

situational depression, shame, public humiliation, and severe disruption to our family's constitutionally-protected sacred right of privacy, and to peace, happiness, and enjoyment of life.

237. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

238. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence...the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

## DEMAND and DESIRED RELIEF

*"The desire of the righteous shall be granted."* Proverbs 10:24

239. I am entitled to relief and remedy and restitution under the United States Constitution 1st Amendment and the Arizona Victims' Bill of Rights Article 2 Section 2.1.

## DEMAND FOR DECLARATORY RELIEF
### for Primary Physical Custody and Sole Legal Decision-Making

240. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

241. The only thing that matters in this controversy is the best interests of the daughter that the Plaintiff and the Defendant share as a gift from God.

242. Our daughter's best interests include her physical and emotional health, education, safety, and enjoyment of life with every member of her family.

243. I and the Defendant share a solemn, unavoidable obligation and responsibility to care for our daughter by insuring everything in her environment is in our daughter's best interest.

244. To help with determining Legal Decision-Making in the best interests of a child, considerations for the Court have been codified in ARS 25-403:

*parent education; 7. Make any other order that may promote the best interests of the child or children involved.".*

## DEMAND FOR INJUNCTIVE RELIEF
### from harassment and custodial interference

264. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

265. I, Plaintiff, have shown an existence of an imminent and ongoing likelihood of irreparable harm if an injunction is not issued.

266. Financial damages are not an adequate remedy at law for the loss of time with, affection, love or life with my daughter.

267. The threatened present and future harm to me the Plaintiff, outweighs any reasonable possible harm to the Defendant.

268. Granting an injunction against ongoing harassment and custodial interference will not contravene any substantial public interests, but rather serve public interests.

269. I believe I have demonstrated the facts alleged in my petition and am entitled to the order sought as a matter of law.

270. I believe I have a substantial likelihood of success based on the underlying allegations.

271. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

272. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence...the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

## DEMAND FOR INJUNCTIVE RELIEF
### Ordering visitation rights contingent upon completion of a proper
### Mental Status Exam and applicable treatment for the Defendant

*A. The court shall determine legal decision-making and parenting time, either originally or on petition for modification, <u>in accordance with the best interests of the child</u>. The court shall consider all factors that are relevant to the child's physical and emotional well-being, including:*

*1. The past, present and potential future relationship between the parent and the child.*

*2. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest.*

*3. The child's adjustment to home, school and community.*

*5. The mental and physical health of all individuals involved.*

*6. Which parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent. This paragraph does not apply if the court determines that a parent is acting in good faith to protect the child from witnessing an act of domestic violence or being a victim of domestic violence or child abuse.*

*7. Whether one parent intentionally misled the court to cause an unnecessary delay, to increase the cost of litigation or to persuade the court to give a legal decision-making or a parenting time preference to that parent.*

*8. Whether there has been domestic violence or child abuse pursuant to section 25-403.03.*

*9. The nature and extent of coercion or duress used by a parent in obtaining an agreement regarding legal decision-making or parenting time.*

*B. In a contested legal decision-making or parenting time case, the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child.*

245. The Defendant has shown by her pattern of behavior not to put our daughter's best interests first by failing or refusing to consider our daughter's past, present, and future relationship with her father.

246. The Defendant has shown by her pattern of behavior not to put our daughter's best interests first by failing or refusing to consider our daughter's interrelationship with her father and brother.

247. The Defendant has shown by her pattern of behavior not to put our daughter's best interests first by failing or refusing to consider our daughter's emotional attachment to her home with her father and brother, school and community.

248. The Defendant has shown by her pattern of behavior to have no personal regard for the mental or physical health of all individuals involved.

249. The Defendant has shown by her pattern of behavior that she is not more likely, in fact she is not likely at all, to allow our daughter frequent, meaningful and continuing contact with her father.

250. Furthermore, the Defendant's actions constitute multiple acts of Domestic Violence pursuant to ARS 13-3601 towards me, the Plaintiff.

251. Pursuant to ARS 25.403.03 Domestic Violence, Section A. *"<u>Joint legal decision-making shall not be awarded if the court makes a finding of the existence of significant domestic violence pursuant to section 13-3601</u>"* and Section B. *"<u>The Court shall consider evidence of domestic violence as being contrary to best interests of the child. The Court shall consider the safety and well-being of the child and of the victim of the act of domestic violence to be of primary</u>*

*importance."* Therefore, joint legal decision-making shall not be awarded due to existence of domestic violence.

252. Furthermore, in considering awarding Sole Legal Decision-Making, the court shall consider the child's best interests pursuant to ARS 25-403.01 Section 2. *"Whether a parent's lack of agreement is unreasonable or is influenced by an issue not related to child's best interest"* section 3. *"The past, present, and future abilities of parents to cooperate in decision-making about the child to the extent required by the order of joint legal decision making."*

253. The Defendant's actions have shown an unreasonable lack of agreement and inability to cooperate in future decision-making.

254. Furthermore, regarding Parenting Time, it is in our daughter's best interests that she gets maximum time with both parents.

255. The Defendant's actions have shown unreasonable disagreement to this, showing her to be unreliable to be entrusted with Primary Custody.

256. I have shown that there is a bona fide, actual, present, practical need for the Court to declare and award Sole Legal Decision-Making and Primary Physical Custody for the Plaintiff.

257. The need for the declaration deals with a present, ascertainable controversy.

258. My sacred parenting rights and my daughter's rights to enjoyment of love, affection, and life with her father and brother are dependent on the facts or law applicable to the facts laid out herein.

259. The Defendant has an actual, present, adverse, and antagonistic interest in the subject matter in fact.

260. The adverse and antagonistic interest is before the Court by proper process.

261. The relief sought is not merely answers to curiosity, but is just, righteous, lawful, and in the best interests of our daughter.

262. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Judgment for Scott-Thomas; .Bradley and against the Defendant, Lori Lynn Bradley, in the best interest of my and the Defendant's daughter, for the Declaratory Relief of Sole Legal Decision-Making for me the Plaintiff and Primary Physical Custody for me the Plaintiff pursuant to ARS 25.403.03, Declaratory Relief from paying the Defendant Child Support, for Injunctive Relief against the harassment, custodial interference, parental alienation, kidnapping of the Defendant, and such further and other relief as this Court may deem just and proper.

263. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests this Court execute an order for the Defendant to attend psychiatric counseling focused on ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper, pursuant to the Court's lawful authority as codified in ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence...the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order*

273. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

274. The root cause of the active, present controversy is not a custody issue. It is natural law that in the absence of child abuse, it is in the best interests of our daughter to get maximum and equal time with both her parents. For this reason, God created both a father <u>and</u> a mother.

275. The root cause of this controversy is some form of thought disorder of the Defendant, manifesting in the unsubstantiated idea that I the Plaintiff am a "bad dad." This is also known as a persecutory delusion manifesting through parental alienation.

276. I the Plaintiff am seriously concerned the Defendant's persecutory thought delusion is being imposed and induced upon our daughter through the Defendant's behavior and actions.

277. I have been informed by specially trained psychologists that thought disorders are usually caused by an assessable, diagnosable, and treatable personality disorders falling under the sub-categories of narcissistic, psychopathic, sociopathic, or borderline personality disorder issues.

278. This can only be assessed by a proper Mental Status Exam by a qualified psychiatrist with special expertise with these disorders, not a typical family psychiatrist.

279. While I am not interested in placing labels on the Defendant, I do believe addressing the custody issue without taking a treatment-based approach is not in the best interests of our daughter.

280. This Court has lawful authority to order the Defendant undergo a Mental Status Exam and complete appropriate psychological treatment contingent upon a confirming diagnosis pursuant to ARS 25.403.03 F. 3. *"If a court finds a parent has committed an act of domestic violence…the court may: 3. Order parent who committed act of domestic violence to attend and completed, a program of intervention for perpetrators of domestic violence"* and pursuant to ARS 25-414 A. 3. and 7. *"If a parent has refused without good cause to comply with parenting time, the court may: 3. Order parent education; 7. Make any other order that may promote the best interests of the child or children involved."*

281. Financial damages are not an adequate remedy at law for this matter.

282. The threatened present and future harm to me the Plaintiff and our daughter, outweighs any reasonable possible harm to the Defendant.

283. I believe I have demonstrated the facts alleged in my petition and am entitled to the order sought as a matter of law.

284. I believe I have a substantial likelihood of success based on the underlying allegations.

285. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter an order of execution that the Defendant, Lori Lynn Bradley, undergo a proper Mental Status Exam and complete a minimum of six months appropriate treatment plan, contingent upon a confirming diagnosis, by a qualified psychiatrist in the specialized thought disorders listed above, with the focused goal of ending her alienating behavior and domestic violence, and such further and other relief as this Court may deem just and proper.

286. WHEREFORE, justice for and the best interests of my daughter include a healthy, intimate, meaningful, and ongoing relationship her mother, the Plaintiff respectfully requests and demands that this Court execute an order for visitation rights to the Defendant contingent upon the Defendant's active participation and completion of the ordered treatment-related approach, with the goal of achieving and restituting future joint custody status for the Defendant.

**DEMAND FOR DECLARATORY RELIEF**
**from payment of child support**

287. I, Plaintiff, aver all allegations contained in the preceding paragraphs and incorporate them in this count, as if set forth at length herein.

288. I, Plaintiff, invoke and enforce the Supremacy Clause of the United States Constitution that says lesser statutes, codes, ordinances, or laws fall when met with a higher authority. I recognize and stand under the Supreme Law of God, written in the King James Bible 1611 as the superior LAW, and also under the laws of man when not in conflict with God's Law.

289. The Holy Bible "THE WORD OF GOD" is Public Law 97-280 (October 4, 1982).

290. God's Law says that *"…if any provide not for his own, and specially for those of his own house, he hath denied the faith, and is worse than an infidel."* (1 Timothy 5:8)

291. I do aver I have always, and will forever by the grace of God, provide for those of my household, including my children.

292. God's Law also says I am not to be a slave to any "Person": *"For he that is called in the Lord, being a servant, is the Lord's freeman…Ye are bought with a price; be not ye the slaves of men."* (1 Corinthians 7:22-23)

293. I do aver I am of majority age, turning 18 in 2001. Any forced obligation without my sovereign consent would be slavery upon a free man.

294. A man may choose to liberally give away his property, that is called generosity and charity. But when someone steals his property that is called THEFT. When someone uses threats, fear, and intimidation, or to steal his property it is called COERCION. If that "someone" is government or acts/pretends to be government, it is called EXTORTION, breach of fiduciary duty, slavery and treason.

295. "A workman is worthy of his hire." "It is against equity for freeman not to have the free disposal of their own property." – Maxims of Commercial Law

296. I do aver that to be obligated to a child support contract by a private, foreign, for-profit corporation operating under the "color of law" without my sovereign consent constitutes slavery, which is repugnant to the Laws of God and the Constitution, and violates my conscience and my sacred First Amendment right to my deeply held "freedom of religion."

297. Furthermore, the Supreme Court has ruled that child support is not a court order, it is a contract. *"Child support is not a judicial process but an administrative tribunal. Child support order has no appeal."* Holmberg v. Holmberg, 588, 2D, 720 (1999).

298. Furthermore, In U.S. v. Sage, 92 F.3D 101 (2D Cir. 1996), it was found that child support agreements are "interstate commercial contracts", no different than a student loan or car note, that can demand payments from parents who are labeled "obligors" but NOT from fathers.

299. Furthermore, in Blessing v. Freestone, 520 U.S. 329 (1997), the conclusion was that Title IV-D was not intended to benefit individual children and custodial parents, therefore does not constitute a federal right.

300. Furthermore, in <u>Carelli v. Howser</u>, No. 90-3340 (1990), it was found that mothers don't have rights to child support as they are not the intended benefit of the <u>statute</u>. This confirms Title IV-D is a statute, ordered to stand down when met with the Supremacy Clause of the Constitution.

    (a) *"All codes, rules, and regulations are for government authorities only, not human/creators in accordance with God's laws. All codes, rules, and regulations are unconstitutional and lacking due process…"* <u>Rodriques v. Ray Donavan (U.S. Department of Labor)</u> 769 F 2d. 1344, 1348 (1985).

    (b) *"All laws, rules, and practices which are repugnant to the Constitution are null and void"* <u>Marbury v. Madison</u>, 5th U.S. (2 Cranch) 137, 1174, 176 (1803).

301. Furthermore, forced obligation and/or garnishment of a custodial parent's "wages" or "earnings" is prohibited under CSEA (the Child Support Enforcement Amendments of 1984) as affirmed in <u>Malhan v. Secretary United States Department of State</u>, No 18-3373 (3d. Cir. 2019).

302. In my previous Affidavits, unrebutted and standing as judgment, I have previously rescinded and repudiated all contracts with the STATE OF ARIZONA, ARIZONA DEPARTMENT OF ECONOMIC SECURITY DIVISION OF CHILD SUPPORT ENFORCEMENT, SUPERIOR COURT OF ARIZONA, and all its subsidiary companies for fraud and swindle, no meeting of the minds, parties incompetent to contract, no free and genuine consent, and lack of full and honest disclosure, among other reasons.

303. The **right of property** is a fundamental, natural, inherent, and inalienable right…In fact, it does not owe its origin to the constitutions which protect it, for it existed before them. It is sometimes characterized judicially as a sacred right, the protection of which is one of the most important objects of government. (American Jurisprudence 2nd 1964 vol. 16 § 362 Nature of Right guaranteed Pg. 691)

304. Liberty of contract involves, as one of its essential attributes, <u>the right to terminate contracts,</u> **Valid contracts are property** and as such are protected from being taken without just compensation. The United States Supreme Court has stated that freedom to contract is the essence of freedom from undue restraint on the right to contract. Other courts have stated that <u>**the liberty to make contracts includes the corresponding right to refuse to accept a contract or to assume such liability as may be proposed**</u>. The right of liberty to contract is inherent and inalienable. It belongs to everyone by the law of the land; every man has the right freely to deal, or to refuse to deal, with his fellow men. (American Jurisprudence 2nd 1964 vol. 16 § 373 Rights of Contract Pg. 706-707).

305. This means to take away one's right to refuse or rescind contract with anyone is to take away "the right of property," a Right that's guaranteed and un-a-LIEN-able!

306. WHEREFORE, the Plaintiff, Scott-Thomas; .Bradley, respectfully requests and demand that this Court enter a Declaratory Judgment together and with the other declaratory judgments for Scott-Thomas; .Bradley, releasing me as primary custodial parent from the unconscionable contract of child support.

307. The Plaintiff hereby demands Summary Judgment of all truth and facts placed upon the record by my courts of record, my documents. And hereby demands a trial by jury of all issues so triable.

All my sworn facts are true and correct to the best of my memory and all statements are made in good faith and sworn to under penalty of perjury in common law. Without prejudice, and without recourse, I, hereby reserve all my God-given rights and place my Autograph and Seal below:

Date: __5/19/22__          BY: _Scott-Thomas; .Bradley_

SCOTT THOMAS BRADLEY – VESSEL

Published by: Scott-Thomas; .Bradley, Executor/Beneficiary

c/o 18440 North 68th Street, #4040

Phoenix, Arizona [Zip Exempt]

**Notary Public as JURAT CERTIFICATE**

Arizona State

Maricopa County

On ___19th___ day, of the __May__ month, in the year of our Lord and Savior, two thousand twenty two, before me, a Notary Public, personally appeared :Scott Thomas; .Bradley: who proved to me on the basis of satisfactory evidence to be the man whose Name is subscribed to the within instrument and acknowledged to Me that he executed the same in his authorized capacity. I certify under PENALTY OF PERJURY under the lawful laws of Arizona State and that the foregoing paragraph is true and correct and complete.

WITNESS my signature and official seal.

Signature of public Notary as Jurat __Cathne Hag__

Seal

CATHERINE HOUGLUM
Notary Public - Arizona
Maricopa County
My Commission Expires
September 1, 2024
Commission # 593948

## PROOF OF SERVICE

I, Scott-Thomas; .Bradley, hereby certify that on 23rd day of ___May___ month, I sent a true and correct copy of the this document via Registered Mail # ___RA 312 347 590 US___

to the Defendant named in this document.

By: ___Scott-Thomas; .Bradley___

By: Scott-Thomas; .Bradley